**MARK A. LARRAÑAGA**
**WALSH & LARRAÑAGA**
**705 2ⁿᵈ Ave., Ste. 501**
**Seattle, WA  98104**
**Telephone:  (206) 972-0151**

**RICHARD A. SMITH, WSBA 15127**
**SMITH LAW FIRM**
314 No. Second Street
Yakima, WA  98901
Telephone: 509-457-5108

**Attorneys for Defendant**
Donovan Cloud

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON
### (Honorable Salvador Mendoza, Jr.)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) NO.  1:19-CR-02032-SMJ-2 |
| vs. | ) MOTION TO SUPPRESS |
| | ) IDENTIFICATION |
| DONOVAN CLOUD, | ) |
| Defendant. | ) DATE:      December 15, 2020 |
| | ) TIME:      9:00 A.M. |

**TO:   Clerk of U.S. District Court, Eastern District of Washington**
**TO:   Thomas J. Hanlon, Assistant United States Attorney**

  **COMES NOW** the Defendant, DONOVAN CLOUD, by and through his

attorneys of record, RICHARD A. SMITH, of Smith Law Firm and MARK

MOTION TO SUPPRESS IDENTIFICATION - Page 1

LARRAÑAGA of Walsh and Larrañaga, and moves the Court for an Order suppressing JV's tainted identification of Donovan Cloud.

This motion is made based upon the Memorandum of Points and Authorities submitted with this motion.

DATED this 11th day of September, 2020.

Presented by:

/s/ Richard A. Smith
RICHARD A. SMITH, WSBA 15127
Attorney for Defendant Donovan Cloud

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO SUPPRESS IDENTIFICATION

### I.    BACKGROUND

On June 8, 2019, at approximately 4:45 p.m., N.V. called 911 and reported that two men had walked into her yard on Evans Road (Wapato, Washington), put a gun to her son's head and stole her husband's truck. [ECF 155, page 7.] A CAD (Call Automated Dispatch) report indicates N.V. described the suspects as "looked Native", "white tank", and "think shorts".

Yakima County Sheriff's Office (YCSO) Deputy Hintze was the first to arrive at the M.V. residence along with Deputy Taylor and subsequently Yakima Tribal Police Officer Anthony Oaks. On this contact with J.V., Deputy Hintze reported:

> I immediately got the truck info and broadcast that information over the air to other units. I quickly got a suspect description to put over the air as well. J.V. was obviously excited and trying to remember details. J.V. could only remember one male had what he could only describe as an "oversized tank top" that was white, and that he had shorts on, or he believed. Once I broadcast that info, I got more info.

MOTION TO SUPPRESS IDENTIFICATION - Page 2

J.V. told me he was working in his house on a bathroom remodel when his wife came in and told him there were two men in the back yard, and one had a gun to their son _____ head. J.V. said he went into the garage to see what was happening and found a male he described as "Native" with a shotgun in his garage. J.V. said he believed the shotgun to be "sawed off". Just outside of the garage J.V. saw another male, that he also described as "Native" who was slightly taller than the first male who was holding a pistol to _____'s head. The man with the pistol was demanding keys to a vehicle.

J.V. reported that when he provided keys to a van the man with the pistol demanded keys to a truck. J.V. returned to the mudroom followed by the man with the shotgun. J.V. gave the truck keys to the man with the shotgun who gave the keys to the man with the pistol who was yelling at J.V. during the entire exchange to "quit stalling". J.V. described the shotgun man as "jumpy" and pistol guy as "yelling" at him and "really upset" in a written statement he completed on June 8, 2019, at approximately 5:45 p.m., approximately an hour after the event. (BN 00000040-49)

J.V. was apparently unable to provide any more complete or detailed description of the two men at his house. By all reports from law enforcement, no agent, deputy or Tribal officer questioned J.V. to attempt to obtain additional information regarding the clothing or physical description of the two men. Instead, Agent Ribail and Det. Cypher created a photo array containing photos of James Cloud and Donovan Cloud based on who they suspected of the crime.

The Government reports that Agent Ribail and Det. Cypher traveled to the Yakima County Sheriff's Office Substation in Zillah on June 9, 2019 to compile a photo line-up for each of the four suspects in the murders, carjacking and kidnapping. At the Substation Agent Ribail and Det. Cypher used a Spillman technology software program to generate the line-ups. Creation of the line-ups took approximately two

MOTION TO SUPPRESS IDENTIFICATION - Page 3

**SMITH LAW FIRM**
314 North Second Street
Yakima, WA 98901
(509) 457-5108

hours.  [ECF 155, page 11, lines 10-17]  Four line-ups were created and identified by the numbers:  (1) 5032 (containing a photograph of Donovan Cloud); (2) 5033 (containing a photograph of James Cloud); (3) 5034 (containing a photograph of Morris Jackson); and (4) 5035 (containing a photograph of Natasha Jackson).  The Natasha Jackson line-up was the last photo array created by Det. Cypher and Agent Ribail and it appears to have been produced at 12:32 p.m. on June 9, 2019.

Agent Ribail and Det. Cypher next went to J.V.'s residence.  [ECF 155] Neither Agent Ribail nor Det. Cypher documented a timeline from the creation of the photo arrays to their time of arrival at the J.V. residence or the time Agent Ribail administered the display to any family member.  In fact, Agent Ribail did not document the time of any event involving his contact with the Verwey family and specifically J.V. on June 9, 2019.

The photo array (number 5032) administered to J.V. contained a photograph of Donovan Cloud.   As the photo was obtained from the Yakima County Department of Corrections, Donovan Cloud is clothed in orange, the traditional color of jail garb. *See* Exhibit A (BN 816).

Agent Ribail administered the 5032 photo array to J.V.  To "record" his administration of the photo Agent Ribail wrote cryptic notes on the photographic line-up instructions he claims were read to J.V. prior to showing him the photographic array.  Regarding photo array number 5032, Agent Ribail wrote "looks like guy had pistol to son's head, facial hair, height, hair, teared up almost (indecipherable)".  The tentative and hesitant response that Agent Ribail recorded is a response anticipated by the Department of Justice (DOJ) in its directive to administrators of photo arrays regarding procedures for conducting the administration of a photo montage.  DOJ instructs its agents:

MOTION TO SUPPRESS IDENTIFICATION - Page 4

**SMITH LAW FIRM**
314 North Second Street
Yakima, WA  98901
(509) 457-5108

8.3    If the witness is vague in his or her answer, such as "I think it's number 4", the administrator should say "you said I think it's number 4, what do you mean by that?"  *See* attached U.S. Dept. of Justice Eyewitness Procedures for Conducting Photo Arrays, January 6, 2017.

Agent Ribail did not follow this protocol.  Department of Justice policy requires the administrator to ask the witness to state in his own words how confident he or she is in the identification (known as a statement of confidence), Section 8.2, Exhibit B, January 6, 2017.  Agent Ribail did not obtain a statement of confidence.

DOJ also requires its agents to document the witness identification of a photo, if any, and the corresponding statement of confidence; (1), by video or audio recordings (Section 9.1.1), or the administrator must immediately write down as close to verbatim as possible the witness identification and statement of confidence, as well as any relevant gestures or non-verbal reactions.  Section 9.1.2, Exhibit B.  Agent Ribail wrote "looks like the guy had pistol to son's head, facial hair, height, hair, teared up almost _____ (decipherable)."

The identification documented by Agent Ribail included "height" - a physical attribute that could not be determined from the photo array.  Agent Ribail did not comply with his own agency's policy to include a "statement" of confidence.  J.V. provided his own statement of confidence later that same day, but only after viewing a Facebook photo of Donovan Cloud which had been uploaded to Yakima Scan.  Now, Agent Ribail claims in his report that J.V. "stated that he was 100% sure these were the two carjacking subjects.  J.V. stated that the pictures were better representations of them."

/ / /

/ / /

MOTION TO SUPPRESS IDENTIFICATION - Page 5

**SMITH LAW FIRM**
314 North Second Street
Yakima, WA  98901
(509) 457-5108

## II.    PROTOCOL/PROCEDURES

On January 6, 2017 the Department of Justice issued its eyewitness identification procedures for conducting photo arrays.  *See* Exhibit B.  Most relevant here are the following directives:

8.2    If the witness makes an identification, the administrator should ask the witness to state in his or her own words how confident he or she is in the identification (known as a "statement of confidence").

8.3    If the witness is vague in his or her answer, such as, "I think it's #4," the administrator should say:  "You said [I think it's #4]. What do you mean by that?"

9.1    The witness's identification of a photo, if any, and the corresponding statement of confidence should be clearly documented by:

9.1.1  Video- or audio-recording the photo array[1]; or

9.1.2  The administrator immediately writing down as close to verbatim as possible the witness's identification and statement of confidence, as well as any relevant gestures or non-verbal reactions.  The witness should affirm the accuracy of the statement.

9.3    The administrator should document the following elements of the identification procedure:

9.3.1  The approximate amount of time it took the witness to make an identification;

---

[1] Electronic recording serves several important purposes:  it preserves the identification process for later review in court, it protects officers against unfounded claims of misconduct, and it allows fact finders to directly evaluate a witness's verbal and nonverbal reactions and any aspects of the array procedure that would help to contextualize or explain the witness' selection.

MOTION TO SUPPRESS IDENTIFICATION - Page 6

**SMITH LAW FIRM**
314 North Second Street
Yakima, WA  98901
(509) 457-5108

9.3.2   The presentation method and order of the photographs displayed;

9.3.3   The names of all persons present during administration; and

9.3.4   Any other facts or circumstances that would help contextualize or explain the witness's selection.

In the Government's response [ECF 155] to Co-Defendant James Cloud's Motion to Suppress [ECF 147] AUSA Thomas Hanlon notes that on June 9, 2019, the very same day Agent Ribail administered the photo array to J.V., the FBI promulgated their "Procedures for Eyewitness Identification of Suspects Policy Guide". *See* attached Exhibit B. That document and the policies identified therein incorporate and rely on the Department of Justice Memorandum, Eyewitness Identification: Procedures for Conducting Photo Arrays (January 6, 2017) identified above as Exhibit B.

Although it is unlikely that Agent Ribail was being guided by the FBI policy statement issued the same day that he administered the photo line-up to J.V., FBI policy itself required the administrator to ask the witness "How confident he or she is regarding any identification made." *See* Exhibit C; request the witness not have contact with the media and document the use of photographic line-ups as follows:

4.7.4   (U)  After conducting a photographic lineup, the employee must document the use of the technique in Sentinel.  Document should include:

- (U) All identification or nonidentification results.
- (U) The approximate date, time, and location of the photographic lineup.
- (U) The procedures used in the photographic lineup (i.e., sequential or simultaneous).

MOTION TO SUPPRESS IDENTIFICATION - Page 7

**SMITH LAW FIRM**
314 North Second Street
Yakima, WA  98901
(509) 457-5108

- (U) A summary of the instructions provided to the witness.
- (U) The identification information and source of all photographs used.
- (U) Any alterations made to either the suspect's or fillers' photographs, including the reason for the alterations (e.g., to conceal prison number board).
- (U) The presentation order of the photographs and whether any photograph was shown to the witness more than once.
- (U) The names of all persons present during the photographic lineup.
- (U) The witness's stated degree of certainty for both identification and nonidentification results.
- (U) The approximate amount of time the witness required to make an identification, if applicable.
- (U) The reason for not using blind or blinded administration, if applicable.

(U) Any original records associated with the photographic line up procedure (e.g., all photographs shown to the witness, recordings of the procedure, or signed witness statements) must be maintained in the case file.

Agent Ribail did not abide by protocol or procedures issued by the Department of Justice and his own agency;

He did not document the time of the administration of the photo array; and

He did not document whether any photograph was shown to the witness more than once; and

He did not document the approximate amount of time J.V. required to make his uncertain and ambivalent "looks like" identification; and

MOTION TO SUPPRESS IDENTIFICATION - Page 8

**SMITH LAW FIRM**
314 North Second Street
Yakima, WA  98901
(509) 457-5108

He did not ask J.V. to clarify or expand on an ambivalent identification;[2] and

He did not obtain the witness stated degree of confidence; and

He did not document whether the photo array was administered sequentially or simultaneously;[3] and

Agent Ribail did not document any caution to J.V. to avoid contact with the media, avoid performing his own investigation or "encourage the witness to avoid contact with the media or exposure to media accounts concerning the incident". *See* Exhibit D (DOJ Eyewitness Evidence, A Guide for Law Enforcement).

Because Agent Ribail did not document any caution to J.V. to avoid contact with media or media accounts or perform his own independent investigation it is unclear whether Agent Ribail did or did not warn or caution J.V. accordingly. In its response [ECF 155] to Co-Defendant James Cloud's Motion to Suppress J.V.'s Tainted Identification [ECF 147], the Government only admonishes co-defendant Cloud that this FBI policy was not intended to prohibit J.V. from viewing a public safety warning and FBI policy did not (ridiculously) require that Agent Ribail warn J.V. to avoid public safety warnings. [ECF 155, page 24]

The photo of Donovan Cloud that resulted in J.V.'s 100% certainty was not part of, or included in any, "public safety warning". The photo was posted on Yakima Scan at 2:18 p.m. (Exhibit E). Nicholas Pimms reposted a screenshot of the original to the Yakima Scan Facebook page on Sunday, June 9, 2019 at 2:54 p.m. (Exhibit F). This photo is not included in any "Yakima Nation Public Safety Warning" because (1)

---

[2] Agent Ribail recorded J.V.'s comments at the time he viewed the photo array as "looks like", and "height and hair". For unknown reasons Agent Ribail failed to follow his agency's protocol or even common sense and ask him what he meant by "looks like" and how he was making a height comparison from a mug shot.

[3] The Government itself first reported that this line-up was administered sequentially in ECF 155, page 12, but according to Agent Ribail's own report of his administration of the photo array to Victim #4, "Victim 4 did not identify anyone but stated the person with the pistol was much uglier than Number 3 (Aaron Leroy Edmond). Victim 4 stated this while she alternated between looking at photographs number 3 and number 6". [BN 5973]

MOTION TO SUPPRESS IDENTIFICATION - Page 9

**SMITH LAW FIRM**
314 North Second Street
Yakima, WA 98901
(509) 457-5108

Donovan Cloud was arrested at approximately 2:00 p.m. on June 9, 2019.  Moreover, this photo could be viewed by J.V. doing his own investigation either prior to or immediately after viewing Agent Ribail's photo montage.

When Agent Ribail failed to caution J.V. to avoid contact with the media or media accounts (or perhaps even worse J.V. disregarded any caution or directive from Agent Ribail), J.V. launched his own investigation resulting in 100% certainty after viewing the Facebook photo of Donovan Cloud as "armed and extremely dangerous". *See* Exhibit F.

### III.    LEGAL ARGUMENT

The aim of excluding identification evidence obtained under unnecessarily suggestive circumstances is to deter law enforcement's use of improper procedures. *Perry v. New Hampshire*, 565 U.S. 228 (2012).  Our Supreme Court requires exclusion of unreliable identifications under the Due Process Clause where police engage in misconduct.  *Perry, Id.*  However, only those acts of misconduct that create circumstances that are both unnecessary and suggestive satisfy the "police misconduct" element of *Perry v. New Hampshire*, 565 U.S. 228 (2012) and *Manson v. Braithwaite*, 432 U.S. 98 (1977).

If police misconduct is revealed, then the court must determine whether the identification procedure was "unnecessarily suggestive" and finally whether the resulting identification was nonetheless reliable and therefore admissible under the law "totality of circumstances".  *Manson v. Braithwaite*, 432 U.S. 98 (1977).

### A.    Agent Ribail's failure to caution J.V. to avoid media accounts or independent investigation is improper police conduct.

Agent Ribail is "a 17 year veteran of the FBI".  He has received training on conducting photo line-ups, personally conducted approximately 20 line-ups in the

MOTION TO SUPPRESS IDENTIFICATION - Page 10

**SMITH LAW FIRM**
314 North Second Street
Yakima, WA  98901
(509) 457-5108

course of his career, observed an additional 20, and has trained new agents on how to conduct line-ups.  [ECF 155, page 11]  Accordingly, he is trained and has trained agents pursuant to the directives, protocols and procedures contained in Exhibits C, D and E.

It is difficult to imagine that with the wealth of experience and training possessed by Agent Ribail that his failure to obtain a "statement of confidence" and failure to caution the witness to avoid the media and media accounts was the result of negligence or inadvertence.  His improper administration of the photo array and his failure to properly caution the witness resulted in J.V. engaging in his own independent investigation to identify Donovan Cloud with 100% certainty.

Agent Ribail had the training, the protocols and the procedures in place but refused to employ them to ensure an uncontaminated identification.  Improper conduct is no less than improper if committed by omission rather than commission.

**B.** **The Donovan Cloud show-up was unnecessarily suggestive**.

J.V. was 100% certain that Donovan Cloud was a carjacking subject after viewing a Facebook photo and commentary regarding Donovan Cloud on Yakima Scan.  Prior to J.V.'s viewing of Donovan Cloud's online show-up he had not provided agents with a description of any physical characteristic of the suspects.  He had rendered an ambivalent, hesitant "looks like" identification at the time he viewed Agent Ribail's photo array.  Only after his personal investigation and viewing the Yakima Scan post of Donovan Cloud as "armed and extremely dangerous" and "he murdered five people in White Swan last night", did J.V. provide his own 100% "statement of confidence".

Show-ups are "widely condemned" as a practice that is "inherently suggestive". *See United States v. Brownlee*, 454 F.3d 131 (3rd Cir. 2006). (*See also* Co-Defendant

MOTION TO SUPPRESS IDENTIFICATION - Page 11

**SMITH LAW FIRM**
314 North Second Street
Yakima, WA  98901
(509) 457-5108

James Cloud's compilation of cases condemning show-ups [ECF 147, page 34-35].)
Here, not only did the Facebook post characterize Donovan Cloud as armed and
extremely dangerous it reported (falsely) "he murdered five people in White Swan last
night".

This show-up created by Agent Ribail's misconduct is unnecessarily
suggestive.

**C.**    **J.V.'s identification of Donovan Cloud is unreliable**.

When making a determination whether J.V.'s identification of Donovan Cloud
is nevertheless reliable under the totality of circumstances test, the court considers five
factors:

(1)    The opportunity of the witness to view the defendant at the time
of the crime;

(2)    The witness's degree of attention;

(3)    The accuracy of the witness's prior description of the
defendant;

(4)    The level of certainty demonstrated by the witness at the
confrontation; and

(5)    The length of time between the crime and the confrontation.

*Neil v. Biggers*, 409 U.S. 188 (1972), *Manson v. Braithwaite*, 432 U.S. at 114.

**1.**    **Opportunity to view**.

J.V. reported that he ran to his garage after being contacted by his
wife.  The first person he saw was the man with the shotgun.  The man with the
shotgun stayed in the mudroom area, closest to J.V., while he got the van key and then
followed J.V. back into the house to get the truck key.

MOTION TO SUPPRESS IDENTIFICATION - Page 12

**SMITH LAW FIRM**
314 North Second Street
Yakima, WA  98901
(509) 457-5108

The other person he saw was at a distance. The so-called "pistol guy" was standing outside the garage and by no one's account did the "pistol guy" even come close to J.V. J.V. reported "pistol guy" was "really upset" and "yelling". When asked to describe any individual he saw at his house almost immediately after the event, J.V. said "Native" and "oversized tank top and shorts, or so he believed".

J.V. only saw "pistol guy" from a distance at the same time that "shotgun man" was pointing a shotgun in his face. The entire event was one of chaos and stress.

### 2.    Degree of attention.

J.V.'s attention was focused on "shotgun man" and the shotgun he had pointed at him. On two occasions J.V. left the area where "pistol guy" was located in order to return to the house. Naturally this limited the amount of time that he could observe "pistol guy". On one occasion "shotgun man" followed him to the mudroom. On a second occasion "shotgun man" followed him into the house yet J.V. still could not identify "shotgun man".

His stress level was high and his attention diverted by a shotgun pointed directly at him.

### 3.    Accuracy of prior description.

Native. Law enforcement arrived shortly after the event. J.V. described two men as "Native". Tribal Office Oaks reported J.V. could only remember one male had what he could only describe as an "oversized tank top" that was white and he had shorts on, or so he believed. J.V. was uncertain of even this bit of information.

At least 24 hours later, or approximately 24 hours later (no one knows for certain because time was never documented), Agent Ribail and Det. Cypher met with J.V. and his family to administer a photo array. J.V. apparently had not recalled any

MOTION TO SUPPRESS IDENTIFICATION - Page 13

**SMITH LAW FIRM**
314 North Second Street
Yakima, WA  98901
(509) 457-5108

additional characteristics and no agent reports indicates he was asked for additional physical or clothing description before the photo array was administered.  Agent Ribail's administration of the photo array generated only a "looks like" comment at photo #6 with additional cryptic remarks including "facial hair", "hair" and "height".  Remarks that are unconnected to any prior description that might lend some credibility or reliability to this ambivalent and mystifying identification.

### 4.    **Level of certainty**.

"Looks like" identification is no different than an "I think" identification which is so uncertain and ambiguous that DOJ and the FBI have a specific policy for their agents to respond to this type of unambiguous and uncertain statement during the administration of a photo array.  The level of certainty is low, which may explain why Agent Ribail refused to follow protocol to obtain "a statement of confidence".

### 5.    **Length of time between the crime and confrontation**.

The length of time between the crime and the confrontation is uncertain because it was never documented.  However, time lapse of anywhere up to 24 hours produced only an uncertain and ambivalent identification.  It was only J.V.'s personal investigation in viewing a one person show-up on Yakima Scan that produced a 100% certain identification.

J.V. only saw "pistol guy" from a distance under high stress with a shotgun pointing at him.  He provided no identification other than "Native" prior to viewing the photo array.  His identification of #6 was uncertain and ambivalent and was let to stand without explanation or clarification by Agent Ribail.  The Court should find this prior identification unreliable, tainted by improper administration and a failure to caution against personal investigation.

MOTION TO SUPPRESS IDENTIFICATION - Page 14

**SMITH LAW FIRM**
314 North Second Street
Yakima, WA  98901
(509) 457-5108

6.    **Personal investigation**.

In J.V.'s personal investigation he obtained a post from Yakima Scan depicting Donovan Cloud with a braided pony tail, baseball cap and tank top. The post reads "Donovan Cloud is armed and extremely dangerous.  He murdered 5 people  in white swan last night …"

It would be hard to imagine a more damning show-up.  Predictably J.V. contacted Agent Ribail and told him now he was 100% certain that Donovan Cloud was one of the carjacking subjects.  J.V. said the picture was a better representation of the subject.

Agent Ribail did not attempt to obtain a description of the subjects before he compiled the photo array.  He did not attempt to obtain a description of the subjects before he administered the photo array.  He did not attempt to clarify an uncertain and ambivalent "looks like" identification during the administration of the photo array. True to form he also did not question, or attempt to determine, the basis for J.V.'s statement the Yakima Scan post was a better representation of the suspect.

How.  J.V. never identified the person with braided hair in a pony tail, baseball cap and noticeable identifiable tattoos.  J.V.'s statement that the Yakima Scan post is a better representation of the suspect actually illustrates the unreliability and uncertainty of the photo array "looks like" identification.  None of the characteristics portrayed in the Yakima Scan post such as braided hair, pony tail, baseball cap, tattoos are included in the photo array photograph or any prior identification by J.V.

7.    **Agent Ribail's failure to follow established DOJ and FBI protocols renders the "looks like" identification unreliable**.

A.    Agent Ribail failed to document the administration of the photo array by audio or video recording.  Agent Ribail failed to document the administration

**SMITH LAW FIRM**
314 North Second Street
Yakima, WA  98901
(509) 457-5108

of the photo array in any meaningful detail. *See* Co-Defendant James Cloud's Reply

Supporting Motion to Suppress J.V.'s Tainted ID, ECF 161, pages 6-10.

      B.    Agent Ribail failed to administer a blinded photo array procedure.

*See* Co-Defendant James Cloud's Reply Supporting Motion to Suppress J.V.'s

Tainted ID, ECF 161, pages 7-8.

      C.    Agent Ribail failed to attempt to obtain any identification details

before assembling or administering the photo array.

      D.    Agent Ribail failed to ask the witness to clarify an uncertain and

ambivalent "looks like" identification.

      E.    Agent Ribail failed to obtain a "statement of confidence" from the

witness.

      Each of these noted failures diminish the Court's confidence and the reliability

of the J.V. "looks like" identification.  However, it is the agent's failure to caution

against outside research which results in J.V. viewing the Yakima Scan on-line show-

up thereby tainting his 100% certain identification and the prior "looks like"

identification.

      **D.**    **<u>J.V.'s research generating a 100% certain identification should be
suppressed as well as his tainted ambivalent photo array
identification</u>**.

      The Yakima Scan photograph with its accompanying statement that Donovan

Cloud murdered 5 people is unnecessarily suggestive.  J.V.'s viewing of this post

resulted in a change from an uncertain and ambivalent identification of a photo array

to 100% certain the subject is one of the carjackers.  Each of J.V.'s identifications

should be suppressed.  The identification based upon the Yakima Scan post because of

its obvious and prejudicial identification of Donovan Cloud as the subject and a

MOTION TO SUPPRESS IDENTIFICATION - Page 16

**SMITH LAW FIRM**
314 North Second Street
Yakima, WA  98901
(509) 457-5108

murderer.  J.V.'s ambivalent identification must also be suppressed because of the taint of the post event identification generated by J.V.'s independent research.

The case of *United States v. Emmanuelle*, 51 F.3d 1123 (3rd Cir. 1995), which is cited by Co-Defendant James Cloud in his Motion to Suppress, ECF 147, is also instructive here.

In *Emmanuelle*, the court found unnecessarily suggestive circumstances when the Marshals walked a defendant is shackles past two trial witnesses who had been unable to conclusively identify the defendant prior to trial.  One witness, Ms. Hottell, had previously been shown six photo array.  She selected a photo of the defendant but stated she "wasn't 100% sure of her choice".  At the time the defendant was led past her, as she sat outside the courtroom, Ms. Hottell and the other witness "both looked at each other and … were kind of it's, it has to be him (witness nodding)".  *United States v. Emmanuelle*, 51 F.3d at 1131 (3rd Cir. 1995).

The court excluded the identification of one witness but allowed Ms. Hottell's testimony.  In allowing the testimony the court noted that whether "subsequent viewings create a substantial risk of misidentification may depend on the strength and propriety of the initial identification".  *Id.* citing *Reese v. Fulcomer*, 946 F.2d 247, 248 (3rd Cir. 1991) (emphasis added).  The court noted the *Neil v. Biggers* factors, concluding that Ms. Hottell had (a) several minutes to observe the robbers (b) at close range (c) in a well-lit space with an unobstructed view.  The court determined that her slight qualification – not being 100% sure – did not significantly diminish the import of that identification.

Several factors distinguish J.V.'s identification in this case and require exclusion of J.V.'s "looks like" identification:

MOTION TO SUPPRESS IDENTIFICATION - Page 17

**SMITH LAW FIRM**
314 North Second Street
Yakima, WA  98901
(509) 457-5108

(1)    The *Emmanuelle* court stated "whether there exists a substantial risk of misidentification may depend on the propriety and strength of the prior identification. (emphasis added)  If so, J.V.'s identification fails on both counts;

    (a)    The propriety of J.V.'s "looks like" identification is contaminated by the numerous procedural and protocol violations noted herein; and

    (b)    The "strength" of the "looks like" identification is weakened by the numerous instances of improper police conduct including (1) failure to question the witness regarding the ambivalent identification; (2) failure to obtain a "statement of confidence"; and (3) failure to caution the witness against outside research and contact with media accounts.

(2)    Ultimately, an undefined "looks like" identification is substantially uncertain compared to "not 100% certain".  Not 100% could be 90%, 99% certain.  "Looks like" could be less than 50% certain.  For example, my older sister looks like my younger sister but they are clearly not the same person.

(3)    There is a significant difference in the quality of the suggestiveness of the subsequent viewing by Ms. Hottell and her response.  Viewing a man being led into a courtroom in shackles, Ms. Hottell made the statement "it has to be him".  Here, J.V. viewed the Yakima Scan post that identified Donovan Cloud as armed and extremely dangerous and stated as a fact he was responsible for 5 murders in White Swan the previous evening, prompted a similar response from J.V.: I'm 100% sure that is the suspect.

This Court should exclude any in-court identification of Donovan Cloud by J.V.

/ / /

/ / /

MOTION TO SUPPRESS IDENTIFICATION - Page 18

**SMITH LAW FIRM**
314 North Second Street
Yakima, WA  98901
(509) 457-5108

**E.    J.V.'s identification of Donovan Cloud is irretrievably corrupted**.

J.V.'s "100% certain" identification of Donovan Cloud was in response to the Yakima Scan post.  The post describes Donovan Cloud as "armed and extremely dangerous" and states that "he murdered 5 people in white swan last night".  This was a highly suggestive one-person show-up.

Post-event information such as this corrupts memory and embeds in the witness the confidence he didn't possess when viewing even a properly-assembled and administered line-up.  There is no "undo" key from memory errors.  The only adequate remedy to this corrupted identification is exclusion.  *See* ECF 185-5, pages 9-13, Report of Dr. Cara Laney.

Donovan Cloud anticipates presenting similar testimony from Geoffrey Loftus, Ph.D., regarding the corruption of memory based on post-event information such as the Yakima Scan photo, Exhibit E.  For reasons set forth in Donovan Cloud's motion to continue, ECF 190, Dr. Loftus is unavailable to testify at the evidentiary hearing currently scheduled for September 29-30, 2020.

**F.    The Court should exclude J.V.'s unreliable identification under Fed. Rule of Evid. 403**.

This discussion is adopted from Co-Defendant James Cloud's Motion to Suppress, ECF 147, pages 45-46, and his reply supporting motion to suppress, ECF 161, pages 24-28.

J.V.'s testimony has slight probative value because his initial identification was (1) tainted by improper conduct of the agent administering the line-up; (2) unreliable based upon the *Biggers* factor analysis; (3) ambivalent and doubtful; and (4) corrupted by his viewing the Yakima Scan post.

MOTION TO SUPPRESS IDENTIFICATION - Page 19

**SMITH LAW FIRM**
314 North Second Street
Yakima, WA  98901
(509) 457-5108

Where the probative value of a witness's testimony is marginal, even a "modest likelihood of unfair prejudice is high enough to outweigh the probative value of marginally relevant evidence." *United States v. Espinoza-Baza*, 647 F.3d 1182, 1190 (9th Cir. 2011).

Donovan Cloud asks this Court to exclude any in-court identification of Donovan Cloud by J.V.

DATED this 11th day of September, 2020.

Presented by:

/s/ Richard A. Smith
RICHARD A. SMITH, WSBA 15127
Attorney for Defendant Donovan Cloud

MOTION TO SUPPRESS IDENTIFICATION - Page 20

**SMITH LAW FIRM**
314 North Second Street
Yakima, WA  98901
(509) 457-5108

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury of the laws of the State of Washington that on September 11, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to all parties.

/s/ Lugene M. Borba
LUGENE M. BORBA
Legal Assistant, Smith Law Firm

MOTION TO SUPPRESS IDENTIFICATION - Page 21

**SMITH LAW FIRM**
314 North Second Street
Yakima, WA  98901
(509) 457-5108