**MARK A. LARRAÑAGA**
**WALSH & LARRAÑAGA**
**705 2nd Ave., Ste. 501**
**Seattle, WA  98104**
**Telephone:  (206) 972-0151**

**RICHARD A. SMITH, WSBA 15127**
**SMITH LAW FIRM**
314 No. Second Street
Yakima, WA  98901
Telephone:  509-457-5108

**Attorneys for Defendant**
Donovan Cloud

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON
### (Honorable Salvador Mendoza, Jr.)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　　　　Plaintiff,<br><br>　　vs.<br><br>DONOVAN CLOUD,<br>　　　　　　　Defendant. | ) NO.  1:19-CR-02032-SMJ-2<br>)<br>) MOTION TO CONTINUE THE<br>) TRIAL AND STRIKE THE DEFENSE<br>) MOTON TO SUPPRESS<br>) IDENTIFICATION (ECF NO. 194)<br>) WITH LEAVE TO RENEW<br>)<br>)<br>)<br>) DATE:　　　December 15, 2020<br>) TIME:　　　9:00 a.m. |

**TO:   Clerk of U.S. District Court, Eastern District of Washington**
**TO:   Thomas J. Hanlon, Assistant United States Attorney**

Defense (Donovan Cloud) Motion to Continue
Trial and to Strike the Motion to Suppress Identification
(ECF No. 194) With Leave to Renew

1

# I.    MOTION

**COMES NOW** DONOVAN CLOUD, by and though his attorneys of record, Richard A. Smith and Mark A. Larrañaga moves this Court to continue the current trial date and deadlines set out in ECF No. 165 and per ECF No. 268 moves to strike the Defense Motion to Suppress Identification (ECF No. 194) with leave to renew.

As noted at the November 24, 2020, status hearing, and memorialized in the Court's order issued December 2, 2020 (ECF No. 268), the Government advised that nearly all the outstanding forensics testing should be completed by February 2021, and whether it intends to seek a Fourth Superseding Indictment hinges on the outcome of those results. ECF No. 268 at 1-2.

Although all of the parties agree that a trial under the case's current status would need to be continued to no sooner than the Fall of 2021. It is unclear whether the Court desired the parties to provide potential trial dates based on the current posture of the case, or wait until the outstanding forensic testing and the Government's decision regarding a potential Fourth Superseding Indictment before entertaining possible trial dates.

Donovan Cloud, through counsel, believed the Court wanted the former, and as such requests a trial date of February 28, 2022, with a pretrial conference set for

Defense (Donovan Cloud) Motion to Continue
Trial and to Strike the Motion to Suppress Identification
(ECF No. 194) With Leave to Renew

January 25, 2022.[1]  Donovan Cloud's counsel will work with the parties and provide the Court with a proposed case management order for its review before the next status hearing. These dates are based on the current status of the case.  As noted, there are outstanding matters, including the potential of a Fourth Superseding Indictment that may contain capitally-charged offenses, that will impact the proposed dates.[2]

Counsel for Donovan Cloud have contacted the Government and attorneys for James Cloud to obtain their respective positions. Both agree that the current trial date and deadlines set out in ECF No. 165 should be stricken. Counsel for James Cloud intends to submit a separate pleading setting out their position regarding a proposed trial and due dates. Government counsel believes a new trial date should be set but disagrees with the date proposed in this motion.

//

//

//

---

[1]      One of Donovan Cloud's attorneys informed the Court that he was assigned a federal capital case in the District of Alaska (Anchorage) that was originally set to start in June 2020, but due to COVID-19 was continued, with jury selection to begin September 13, 2021.  *United States v. John Pearl Smith*, No. 3:16-cr-00086-SLG, ECF. No. 935 (Fourth Amended Scheduling Order). That parties in that case estimated the matter could take up to three months.

[2]      Specific DOJ protocols come into play if charges are potential capital. *See e.g.*, U.S. Attorneys Manual (USAM) 9-10.000.

Defense (Donovan Cloud) Motion to Continue
Trial and to Strike the Motion to Suppress Identification
(ECF No. 194) With Leave to Renew

## II.    PROCEDURAL HISTORY

On or about June 11, 2019, the Government indicted both defendants with carjacking and brandishing a firearm during a crime of violence.[3]  A trial was set for August 19, 2019.[4]  Approximately a month before trial, the Government, on July 17, 2019, filed a superseding indictment, adding a charge of kidnapping against both defendants and assault with a dangerous weapon against James Cloud.[5]  On July 22, 2019, based in part on the filing of the superseding indictment, the Court continued the trial to October 28, 2019.[6]

On October 4, 2019, the Court granted the unopposed motion to continue the trial, amending the prior case schedule and setting a trial date for April 27, 2020.[7]  On February 11, 2020, the Government filed is second superseding indictment, adding charges of first degree murder and discharge of a firearm during a crime of violence against James Cloud.[8]  On February 18, 2020, Donovan Cloud filed a motion to continue the trial, to which the Government did not object and James Cloud took no position.[9]

---

[3]    ECF No. 17.
[4]    ECF Nos. 31, 45.
[5]    ECF No. 59.
[6]    ECF No. 79.
[7]    ECF No. 117.
[8]    ECF No. 132.
[9]    ECF Nos. 144, 152.

Defense (Donovan Cloud) Motion to Continue
Trial and to Strike the Motion to Suppress Identification
(ECF No. 194) With Leave to Renew

4

Less than a month later, on March 11, 2020, COVID-19, which was characterized as a pandemic by the World Health Organization, broke out world-wide.[10] On March 13, 2020, the President of the United States declared a national emergency because of the COVID-19 outbreak.[11] At that time, the State of Washington's Governor, Jay Inslee, declared a state of emergency and has banned private gatherings in excess of 250 people throughout the state (originally the ban was limited to three counties).[12]

Donovan Cloud supplemented the motion to continue on April 1, 2020, to include the limitations and restrictions caused by COVID-19.[13] On April 13, 2020, this Court granted in part the motion to continue and set the trial date for January 19, 2021, and reasoned:

> To ensure defense counsel is afforded adequate time to review discovery, prepare any pretrial motions, conduct investigation, and prepare for trial, the Court grants the motion, extends the pretrial motion deadline, and resets the currently-scheduled pretrial conference and trial dates.[14]

---

[10]    See World Health Organization: https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020.

[11]    See https://www.cnn.com/2020/03/13/politics/states-coronavirus-fema/index.html

[12]    On March 15, 2020, CDC provided guidance banning gathering of more than 50 people anywhere in the US for the next 60 days. https://www.cnbc.com/2020/03/16/cdc-recommends-the-cancellation-of-events-with-50-or-more-people-for-the-next-eight-weeks-throughout-us.html

[13]    ECF No. 163.

[14]    ECF No. 165.

Defense (Donovan Cloud) Motion to Continue
Trial and to Strike the Motion to Suppress Identification
(ECF No. 194) With Leave to Renew

On June 18, 2020, the Yakima County Jail, where Donovan Cloud is housed, reported 19 inmates tested positive for the virus, which peaked over the following months to 130 inmates (31% of the inmate population) and 34 correction officers, and although may have recently declined still remains a concern.[15]

A pre-trial hearing and status conference were scheduled for June 23, 2020. However, at that time, Yakima County reported the total COVID-19 related case count was approximately 6,476.[16] The parties submitted a Joint Emergency Motion to Continue Hearing and Status Conference, which this Court granted and rescheduled the matters to September 29-30, 2020.[17]

On September 9, 2020, Donovan Cloud filed a motion to continue the evidentiary hearing scheduled for September 29-30, 2020, based primarily on the devasting effects of COVID-19.[18] The Court denied Donovan Cloud's motion.[19]

---

[15]    Yakima Herald, *Yakima County jail officials say COVID-19 outbreak under control at facility.* https://www.yakimaherald.com/special_projects/coronavirus/yakima-county-jail-officials-say-covid-19-outbreak-under-control-at-facility/article_2e56bf51-8b19-581a-aae8-7c3659e019b4.html (last visited 9/10/2020).

[16]    KIMA, *Yakima County reports 117 new COVID-related cases on Sunday*, July 21, 2020.

[17]    *See* ECF No. 182, 7/1/2020 Text Order.

[18]    ECF No. 190.

[19]    ECF No. 197.

Defense (Donovan Cloud) Motion to Continue
Trial and to Strike the Motion to Suppress Identification
(ECF No. 194) With Leave to Renew

On September 11, 2020, the defense filed a Motion to Suppress Identification.[20] The Government filed its response on September 21, 2020.[21] The hearing is scheduled for December 15, 2020, but the Court directed counsel to provide a status report covering the motion, including whether wishes to strike the motion with leave to renew.[22]

A status conference was held on October 27, 2020.[23] The Court addressed two main areas: discovery concerns and grand jury proceedings, including potential superseding indictments.[24] Part of the discovery matters addressed were the defenses' concern about effective representation when only redacted discovery had been made available. The Court granted disclosure of unredacted discovery be provided to defense counsel, but directed the parties to submit a proposed protective orders regarding how the unredacted discovery was to be shown to and discussed with the defendants.[25]

---

[20]    ECF No. 194.

[21]    ECF No. 204.

[22]    ECF No. 268 at 3.

[23]    ECF No. 235 (transcript of Oct. 27, 2020, status conference).

[24]    ECF No. 230 (Order Memorializing Oral Rulings at Oct. 27, 2020 Status Conference).

[25]    ECF No. 235 at 10-11, 14-15. All parties have filed their respective proposed protective orders as to the disclosure of unredacted materials. ECF No. 236 (Government's Motion for Discovery Protective Order) and ECF No. 237 (Defense Motion and Memorandum in Support of Defense Proposed Protective Order). The

Defense (Donovan Cloud) Motion to Continue
Trial and to Strike the Motion to Suppress Identification
(ECF No. 194) With Leave to Renew

The Government also advised that it intended to seek a third superseding indictment.[26] The Government acknowledged that the alleged crimes at "Medicine Valley Road" were not capital.[27] However, the Government also acknowledged there were two potential homicide crimes separate from those at Medicine Valley Road that may or may not be capitally charged, but were waiting on outstanding lab reports to decide whether to seek a Fourth Superseding Indictment.[28] Given the limitations caused by the COVID-19 pandemic, the Court set November 17, 2020, as a tentative deadline for the Government to seek a Third Superseding Indictment, stressing that deadline is contingent on grand jury proceedings actually taking place.[29]

On November 18, 2020, a Third Superseding Indictment was filed against Donovan Cloud, adding two counts of homicide, two counts of brandishing a firearm during a crime of violence, and two counts of assault.[30]

On November 20, 2020, the parties filed a joint status report setting out potential matters to be addressed at the November 24, 2020, status hearing.[31] At the

---

Court issued its order on November 12, 2020, granting the Government's proposed protective order and denying the defendant's protective order. ECF No. 239.

[26] ECF No. 230 at 3.
[27] ECF No. 235 at 30.
[28] *Id.* at 34-35.
[29] ECF No. 230, 235 at 35.
[30] ECF No. 242.
[31] ECF No. 252.

Defense (Donovan Cloud) Motion to Continue
Trial and to Strike the Motion to Suppress Identification
(ECF No. 194) With Leave to Renew

status hearing on November 24, 2020, the Government informed the Court regarding the status of various matters being tested (*i.e.*, DNA, metallurgy, latent prints, and firearm/tool marks), noting it contemplated the reports be completed before February, 2021.[32] The Government also indicated that some of the materials being tested involve uncharged offenses, but depending on the results the Government would be seeking a Fourth Superseding Indictment.[33]

## III.    LEGAL BASIS

A.    The COVID-19 Pandemic has Significantly Worsened.

As noted, in March, 2020, the COVID-19 pandemic broke out across the world, the United States, the State of Washington, and Yakima County. And it has only gotten worse.

With no relief in sight, in the United States alone, the Covid-19 pandemic has taken ahold of over fourteen million people, with nearly 300,000 lives lost.[34]

---

[32]    ECF No. 268 at 1-2.
[33]    *Id.*
[34]    https://covid.cdc.gov/covid-data-tracker/#cases (Last visited December 4, 2020). As documented by the Centers for Disease Control (CDC), in just one day, from November 10, 2020 to November, 2020, there was over 134,000 new cases and 1,859 new deaths in the U.S. The numbers continue to increase.

Defense (Donovan Cloud) Motion to Continue
Trial and to Strike the Motion to Suppress Identification
(ECF No. 194) With Leave to Renew

9

Currently, the United States is averaging two deaths from COVID-19 per minute and several experts project the death toll will soon surpass 3,000 per day.[35]

Washington state has recorded over 170,000 confirmed cases, over 11,000 hospitalizations, and close to 3,000 deaths.[36] In Yakima County alone, there have been 14,078 confirmed cases; over 11,000 hospitalizations and 312 deaths.[37] In fact, Yakima County has the third highest total number of cases (545.2) per 10,000 residents, with nearby Adams and Franklin counties reporting the first and second highest respectively.[38]

After various local and state governments eased some of the restrictions, areas throughout Washington State saw surges in Covid-19 cases.[39] And the pandemic continues to get worse.

---

[35] Two people dying every minute: US COVID-19 deaths shatter more records, The Sydney Morning Herald, December 5, 2020. https://www.smh.com.au/world/north-america/two-people-dying-every-minute-us-covid-19-deaths-shatter-more-records-20201205-p56kuh.html

[36] https://www.doh.wa.gov/Emergencies/NovelCoronavirusOutbreak2020COVID19/DataDashboard (Last visited December 4, 2020). Members of the defense teams reside in Spokane and King County, locations that have fared just as bad: Spokane County has spiked to over 17,000 confirmed cases and 265 deaths; and King County has over 45,000 confirmed cases and 900 deaths.

[37] *Id.*

[38] *Id.*

[39] John Hopkins University of Medicine, Coronavirus Resource Center, Impact of Reopening and Closing Decisions by State, Washington. https://coronavirus.jhu.edu/data/state-timeline/new-confirmed-cases/washington (last visited November 11, 2020).

Defense (Donovan Cloud) Motion to Continue
Trial and to Strike the Motion to Suppress Identification
(ECF No. 194) With Leave to Renew

On October 28, 2020, the day following a status hearing, the Washington State Department of Health (DOH) released its statewide situation report on COVID-19 transmission.[40] Some of the report's findings include:

- A general rise in the intensity of the epidemic in both western and eastern Washington;

- **Transmission is increasing in western and eastern Washington.** The best estimates of the reproductive number (how many new people each COVID-19 patient will infect) were 1.34 in western Washington and 1.12 in eastern Washington as of October 10. The goal is a number well below one, which would mean COVID-19 transmission is declining;

- **From mid-September to mid-October, case counts and hospitalizations have risen in both western and eastern Washington.** Some of the increase in early October appears to be due to more testing. However, case counts increased during the week ending October 15 despite decreases in testing;

- **Increases in western Washington are widely distributed geographically and across ages.** Growth is particularly high in the 25 to 39 and 40 to 59 age groups and in the Puget Sound region (Snohomish, King and Pierce counties). This wide distribution suggests increases are due to broad community spread, not driven by a single type of activity or setting;

- **Though cases have been rising at a slower rate in eastern Washington, other trends indicate a risk for faster growth in the future.** The proportion of positive tests to total tests is considerably higher in eastern Washington than western Washington. Additionally, the case rate per person in eastern Washington remains twice as high as in western Washington;

---

[40]    https://coronavirus.wa.gov/news/covid-19-activity-intensifying-across-washington-state.

Defense (Donovan Cloud) Motion to Continue
Trial and to Strike the Motion to Suppress Identification
(ECF No. 194) With Leave to Renew

- **Trends are also mixed in counties with flat or decreasing case counts.** After gradual but steady increases through October 5, case counts in Benton and Franklin counties have plateaued. In Spokane County, case counts are now flat following a steep increase in early to mid-September. Case counts are fluctuating in Whitman County, with some likely increases in older people following a recent spike in the college-age population. Cases remain flat in Yakima County.[41]

Although the report notes cases remained flat in Yakima County, the report cautioned: "Any spike in COVID-19 cases will jeopardize our progress toward reopening schools, strain our healthcare system and increase risks during holiday gatherings."[42] Unfortunately the COVID-19 spikes have occurred.

Since that report on November 11, 2020, the coronavirus levels reached record highs in Washington state, prompting health officials to warn that "any in-person gathering is risky."[43] Washington's Secretary of Health, John Wiesman noted: "We are really concerned at this point with what we are seeing in the trends and believe that immediate action is needed now to flatten the curve," which may include regressing to another stay-home order.[44]

---

[41]    *Id.*

[42]    *Id.*

[43]    *Dire warnings from health officials as coronavirus runs wild in Washington: 'Any in-person gathering is risky'*, Seattle Times, November 11, 2020. https://www.seattletimes.com/seattle-news/health/dire-warnings-from-health-officials-as-coronavirus-runs-wild-in-washington-any-in-person-gathering-is-risky/

[44]    *Id.*

Defense (Donovan Cloud) Motion to Continue
Trial and to Strike the Motion to Suppress Identification
(ECF No. 194) With Leave to Renew

Then, on November 15, 2020, because a consistent increase in daily case counts in Washington state - with over 2,000 cases a day over the weekend and average cases in the state doubling over the past two weeks – Governor Inslee held a press conference and stated: "this spike puts us in a more dangerous a position as we were in March," . . . "And it means, unfortunately, the time has come to reinstate restrictions on activities statewide to preserve the public's well-being, and to save lives. These were very difficult decisions that have very real consequences to people's livelihoods.  I recognize that and don't take those impacts lightly, but we must act now and act quickly to slow the spread of this disease."

Consequently, the Governor issued immediate state-wide restrictions, which include, in part:

- **Indoor Social Gatherings** with people from outside your household are prohibited unless they (a) quarantine for fourteen days (14) prior to the social gathering; or (b) quarantine for seven (7) days prior to the social gathering and receive a negative COVID- 19 test result no more than 48-hours prior to the gathering. A household is defined as individuals residing in the same domicile.
- **Outdoor Social Gatherings** shall be limited to five (5) people from outside your household.

Defense (Donovan Cloud) Motion to Continue
Trial and to Strike the Motion to Suppress Identification
(ECF No. 194) With Leave to Renew

Proclamation by the Governor No. 20-25.8 (Nov. 15, 2020).[45] These restrictions were to begin immediately and last at least until December 14, 2020, but due to the dangerous levels of COVID-19, the restrictions were extended to January 4, 2021.[46] Although courts are exempt from the modifications, it is unclear how the restrictions on social gathering can be maintained in courtrooms.

Moreover, COVID-19's transmission and its impact on the human immune system remains unclear. For instance, Dr. Anthony Fauci, the director of the National Institute of Allergy and Infectious Diseases, explained that the data shows that aerosol transmission of the virus does occur, and these aerosol droplets "hang around for a period of time" in the air and do not immediately drop.[47] Researchers have found that "some viruses persist longer in colder and drier conditions; that aerosolized viruses can remain more stable in cooler air; that viruses can replicate more swiftly in such conditions; and that human immune systems may respond differently

---

[45]    https://www.governor.wa.gov/sites/default/files/proclamations/proc_20-25.8.pdf

[46]    Inslee announced new economic supports and extension of restrictions. December 8, 2020. https://www.governor.wa.gov/news-media/inslee-announces-new-economic-supports-and-extension-restrictions

[47]    Holly Yan, "COVID-19 could kill 2,900 Americans a day in December, researchers say. Here's why, and how you can make fall and winter better," *CNN* (Oct. 5, 2020) https://www.cnn.com/2020/10/05/health/fall-winter-covid-19-surge-impact/index.html

Defense (Donovan Cloud) Motion to Continue
Trial and to Strike the Motion to Suppress Identification
(ECF No. 194) With Leave to Renew

14

depending on seasons."[48] Inadequate or poor ventilation and the difficulty of social distancing in indoor environments will likely exacerbate the spread of COVID-19 during the winter months.

The short- and long-term health effects associated with COVID-19 also remain unclear. In a recent multi-state study of symptom duration and risk factors, researchers found the following:

> [E]ven among symptomatic adults tested in outpatient settings, it might take weeks for resolution of symptoms and return to usual health. Not returning to usual health within 2-3 weeks of testing was reported by approximately one third of respondents. Even among young adults aged 18-34 years with no chronic medical conditions, nearly one in five reported that they had not returned to their usual state of health 14-21 days after testing. In contrast, over 90% of outpatients with influenza recover within approximately 2 weeks of having a positive test result.[49]

The unresolved symptoms reported by the highest percentages of patients included cough, fatigue, congestion, dyspnea, a loss of taste and smell, and confusion. Additionally, COVID-19 has been associated with myocarditis, which is

---

[48]    Mike Baker, "Worried about COVID-19 in the winter? Alaska Provides a Cautionary Tale," *New York Times* (Oct. 21, 2020) https://www.nytimes.com/2020/10/21/us/coronavirus-cold-weather-winter-alaska.html

[49]    MW Tenforde, SS Kim, CJ Lindsell, et al., "MMWR Morbidity and Mortality Weekly Report, Symptom Duration and Risk Factors for Delayed Return to Usual Health Among Outpatients with COVID-19 in a Multistate Health Care Systems Network – United States," March – June 2020 (July 31, 2020), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7392393/.

Defense (Donovan Cloud) Motion to Continue
Trial and to Strike the Motion to Suppress Identification
(ECF No. 194) With Leave to Renew

damage and inflammation to the heart muscle, or pericarditis, which is damage and inflammation to the covering of the heart itself.[50] These particular conditions can occur independently or concurrently.

In sum, the pandemic continues to pose significant health and safety risks— both short-term and long-term—with the death toll, hospitalizations, infection rates and positivity rates all continuing to increase at alarming rates in the past few weeks, and with the start of flu season and winter, those rates are currently predicted to escalate dramatically in the months to come even with the hope for vaccines.  And according to the CDC, when an approved vaccine will be widely distrusted and available is unknown.[51]

    B.    <u>Courts Have Routinely Continued Trials Because of the Dangers Associated with COVID-19.</u>

Most state and federal courts across the country have vacated case schedules because of the dangers in conducting court hearings during the pandemic. *See e.g.*, *United States v. Harris*, No. 2:20-cr-00049, 2020 U.S. Dist. LEXIS 88155, at *4-5 (E.D. Cal. May 19, 2020) (Almost every court faced with the question of whether

---

[50]    CDC Staff, "Long-Term effects of COVID-19," Centers for Disease Control and Prevention (Sept. 16, 2020), https://www.cdc.gov/coronavirus/2019-ncov/long-term-effects.html

[51]    8 Things to Know about Vaccine Planning – Center for Disease Control and Prevention:https://www.cdc.gov/coronavirus/2019-ncov/vaccines/8-things.html

Defense (Donovan Cloud) Motion to Continue
Trial and to Strike the Motion to Suppress Identification
(ECF No. 194) With Leave to Renew

16

general COVID-19 considerations justify an ends-of-justice continuance and exclusion of time has arrived at the same answer: yes. Many districts now simply resort to 2-page form orders invoking Section 3161(h)(7)).[52]

On March 30, 2020, dozens of federal Chief Judges entered Orders finding that due to COVID-19, court proceedings "cannot be conducted in person without seriously jeopardizing public health and safety." *See, e.g., United States v. Jackson,*

---

[52]    *See e.g., United States v. Chavez,* et al., No. 15-0285 (N.D. Cal., June 9, 2020)(Dkt. 848), where Government stipulated in a complex case that "[t]he COVID-19 pandemic has truly changed the landscape of our world. The parties also have concerns about greater difficulties in the Fall if, as medical experts have warned, there is an increase in the spread of COVID-19 when the weather cools, schools reopen, and many more people return to their traditional work environments. For all of these reasons, the defense requests, and the government agrees, that it is appropriate to continue the July 9, 2020, trial date to May 2, 2022. The parties also request that the Court vacate the Scheduling Order in its entirety." The Court agreed. *Id.* at 5. *See also United States v. Saipov,* No. 17-cr-722 (S.D.N.Y. April 30, 2020, July 16, 2020)(Dkts. 326, 340)(Federal case where Court concluded continuance was "necessary in light of the COVID-19 health crisis, and to allow the parties to continue their preparation for trial." Dkt. 326. The Court granted the parties' request to exclude time in the interests of justice through August 17, 2020. No trial date has been set in light of the pandemic and parties' need to prepare for trial. Dkt. 340); *United States v. Smith,* No. 16-cr-00086-SLG-1 (D. Alaska,)(Dkt. 935); *United States v. Oscar Contreras Aguilar,* et al., No. 1:18-cr-00123 (RDA)(E.D. Va. July 28, 2020) (Dkt. 647)(In a multi-defendant, complex case, upon motion of some of the defendants and without objection from the government, the court vacates an August 24, 2020 trial date for the non-capital defendants and declines to set a new date, in part because of "the challenges inherent in preparing for and commencing with a multi-defendant criminal jury trial involving many witnesses, some of which are out-of-state, during the COVID19 pandemic.").

Defense (Donovan Cloud) Motion to Continue
Trial and to Strike the Motion to Suppress Identification
(ECF No. 194) With Leave to Renew

No. 1:19-cr-00492, 2020 WL 2759601, at *1(S.D.N.Y. May 26, 2020) ("On March 30, 2020, Chief Judge McMahon issued Standing Order M10-468, finding that in-person proceedings would seriously jeopardize public health and safety . . . ."); *United States v. Keosackdy*, No. 3:19-CR-061 JD (N.D. Ind. May 20, 2020)(Dkt. 57)("[P]ursuant to General Order 2020-08, the Chief Judge of the district has concluded that in-person hearings cannot be conducted without seriously jeopardizing public health and safety as a result of the current Covid-19 pandemic."); *United States v. Collazo*, No. 2:19-00120, 2020 WL 1905293, at *1(S.D.W. Va. Apr. 17, 2020) ("On March 30, 2020, the Chief Judge of this District, acting pursuant to the CARES Act and the authority granted by the Judicial Conference of the United States, found that felony sentencings could not be conducted in person without seriously jeopardizing public health and safety."); *United States v. Emory*, No. 19-00109 JAO, 2020 WL 1856454, at *1(D. Haw. Apr. 13, 2020) ("On March 30, 2020, the Chief Judge of this District, acting pursuant to the CARES Act and the authority granted by the Judicial Conference of the United States, found that felony sentencings could not be conducted in person without seriously jeopardizing public health and safety ..."); *United States v. Rodriguez*, No. 2:19-CR-237-KJM, 2020 WL 3056437, at *1 (E.D. Cal. June 9, 2020) ("On March 30, 2020, the Chief Judge of this District, per General Order 614, [found that] felony pleas under Rule 11 of the Federal Rules

Defense (Donovan Cloud) Motion to Continue
Trial and to Strike the Motion to Suppress Identification
(ECF No. 194) With Leave to Renew

18

of Criminal Procedure and felony sentencings under Rule 32 of the Federal Rules of Criminal Procedure cannot be conducted in person without seriously jeopardizing public health and safety."); and, *In re: Expanded Use of Elec. & Other Signatures Due to Exigent Circumstances Created by Covid-19*, No. ING ORDER MC 120-007, 2020 WL 1816469, at *1 (S.D. Ga. Apr. 9, 2020) ("[O]n March 30, 2020, the Chief Judge of this District, pursuant to Section 15002(b) (1) of the CARES Act and based on a finding that criminal proceedings cannot be conducted in person without seriously jeopardizing public health and safety, entered an Order-MC120-005 . . . .").

This Court issued a similar order on March 30, 2020, finding it necessary in the interest of justice and public health and safety to take proactive measures to help slow the spread of the virus and ensure the safety of litigants, counsel, Court staff, grand jurors, petit jurors, witnesses, and the public.[53] Because the same safety concerns continue to exist, the Eastern District of Washington has issued no less than thirteen (13) general orders – the most recent issued on November 24, 2020 - extending the restrictions or limitations on access to the United States Courthouse in Yakima, Washington (the William O. Douglas Federal Building). [54]

---

[53]    *See General Order* 20-1

[54]    *See General Orders* 20-101-1, 20-101-2, 20-101-3, 20-101-4, 20-101-5, 20-101-6, 20-101-7, 20-101-8, 20-101-9, 20-101-10, 20-101-11, 20-101-12 and 20-101-13. The Court has struck in-person hearings for the same safety concerns. *See e.g.*,

Defense (Donovan Cloud) Motion to Continue
Trial and to Strike the Motion to Suppress Identification
(ECF No. 194) With Leave to Renew

At this point, there is simply too much that we do not know.  These health and safety threats, however, are likely to remain with us until such time as a vaccine is developed and distributed.[55] The report of the Covid-19 Judicial Task Force of the United States Courts, while describing at length various measures that must be considered before it is possible and safe to resume jury trials, has not concluded that trials can be undertaken effectively and safely for all involved during this pandemic. The best that can be hoped for is to "minimize" risk.[56]

No jury trials have occurred in the United States Courthouse in Yakima, Washington since March, 2020, and given the unfortunate reality that the pandemic has gotten worse, and is expected by experts to continue to spread and sicken millions more people, when safe trials are to occur would be nothing short of dangerous speculation. *See, e.g.*, *United States v. Smith*, No. 2:19-cr-00213, 2020 WL 2541713,

---

Case No. 1:19-cr-02058-SMJ, ECF 157 (9/3/2020) and Case No. 4:19-cr-06069-SMJ, ECF 200 (9/8/2020).

[55]    *Criminal Court Reopening and Public Health in the COVID-19 Era, NACDL Statement of Principles and Report,* June, 2020, at 7 ("NACDL does not believe that it is possible to protect health and safety in the courtroom while protecting constitutional rights of accused.").
*https://nacdl.org/Document/CriminalCourtReopeningAndCOVID-19*

[56]    *Conducting Jury Trials and Convening Grand Juries During the Pandemic*, Report of the Jury Subgroup, COVID-19 Judicial Task Force, United States Courts, June 5, 2020.
https://www.uscourts.gov/sites/default/files/combined_jury_trial_post_covid_doc_6.10.20.pdf

Defense (Donovan Cloud) Motion to Continue
Trial and to Strike the Motion to Suppress Identification
(ECF No. 194) With Leave to Renew

at *6 (E.D. Cal. May 19, 2020) ("[P]redicting the trajectory of this virus and its impact on the Court comes with a fair measure of speculation."); *Arizonans for Fair Elections v. Hobbs*, No. CV-20-00658-PHX-DWL, 2020 WL 1808677, at *3 (D. Ariz. Apr. 9, 2020) ("It is folly for anyone to predict exactly how long the pandemic will last and how long the state and local responses to the pandemic will remain in effect."); *In re Broiler Chicken Antitrust Litig.*, No. 1:16-cv-08637, 2020 WL 3469166, at *8 (N.D. Ill. June 25, 2020) ("Recent statements by public health officials about the staying power of COVID-19 also belie Defendants' speculation that things may be so different in the Fall.").

C.     Administrative Office of the United States Courts Memorandum
       Encourage a Consideration to Continuances

On December 7, 2020, the Administrative Office of the United States Courts issued a memorandum regarding "Updated Guidance Regarding Judiciary Response to COVID-19 for Criminal Proceedings and General Workplace Environments." It states, in part:

> As COVID-19 case counts rebound, courts may need to change their current operations or recovery phases to minimize face-to-face interactions. Criminal proceedings continue to pose the highest risk to our court unites and federal defender organizations. Reassessing risks in courtroom activities, trial preparation, and field supervision may be necessary to protect Federal Defenders (FD), Criminal Justice Act (CJA) panel attorneys, probation and pretrial services officers, Court Security Officers and Protective Security Offices.  Contacts with clients in correctional and detention facilities . . . create particular risks.  And courts

Defense (Donovan Cloud) Motion to Continue
Trial and to Strike the Motion to Suppress Identification
(ECF No. 194) With Leave to Renew

21

may once again need to rely on authorized use of videoconferencing for criminal proceedings to limit the spread of the virus.

The memorandum highlights previous guidance with a focus on methods to mitigate the spread of COVID-19 in criminal proceedings, including only conducting in-person proceedings "only when necessary because conducting court proceedings places parties, judges court employees, Deputy U.S. Marshals, and attorneys, and the public at great risk."

Moreover, the memorandum encourages courts give serious consideration to continuances because the obstacles COVID-19 have created in trial preparation:

> When jury trials resume, I encourage courts to give serious consideration to continuance motions in light of the difficulties both sides may have encountered in preparing for trial, as well as to other suggestions proposed by the COVID-19 Judicial Task Force Jury Subgroup on Conducting Jury Trials and Convening Grand Juries During the Pandemic.

D.     COVID-19 Pandemic Severely Impacts Defense Counsels' Ability to Provide Effective Representation.

The constitutional right to counsel is among the most sacred rights. As the Supreme Court instructs, it is "a fundamental component of our criminal justice system:"

> Lawyers in criminal cases "are necessities, not luxuries." Their presence is essential because they are the means through which the other rights of the person on trial are secured. Without counsel, the right to a trial itself would be "of little avail," as this Court has recognized repeatedly. "Of all the rights that an accused person has, the right to be represented by counsel

Defense (Donovan Cloud) Motion to Continue
Trial and to Strike the Motion to Suppress Identification
(ECF No. 194) With Leave to Renew

is by far the most pervasive for it affects his ability to assert any other rights he may have.

*United States v. Cronic*, 466 U.S. 648, 653-54 (1984) (internal cites and footnotes omitted). "The Amendment requires not merely the provision of counsel to the accused, but the 'Assistance,' which is to be 'for his defence.'" *Id*, at 654.; *see also Gideon v. Wainwright*, 372 U.S. 335, 344 (1963) ("[I]n our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him."). This is because being counsel for any client means more than just seeing their client at the courthouse for a hearing or trial. The Supreme Court recognized this when it stated that "the assistance of counsel is not limited to participation in a trial; to deprive a person of counsel during the period prior to trial may be more damaging than denial of counsel during the trial itself." *Maine v. Moulton,* 474 U.S. 159, 170 (1985); *see also Powell v. Alabama*, 287 U.S. 45, 69 (1932) (even an educated defendant "requires the guiding hand of counsel at every stage of the proceedings against him"); and, *Brewer v. Williams*, 430 U.S. 387, 398 (1977) (right to assistance of counsel is a "vital need at pretrial stage").

Pretrial detainees have the right to effective counsel. *Cobb v. Aytch*, 643 F.2d 946, 957 (3d Cir. 1981); *Johnson-El v. Schoemehl,* 878 F.2d 1043, 1051 (8th Cir. 1989)("Pre-trial detainees have a substantial due process interest in effective

Defense (Donovan Cloud) Motion to Continue
Trial and to Strike the Motion to Suppress Identification
(ECF No. 194) With Leave to Renew

23

communication with their counsel and in access to legal materials"). This Sixth Amendment right attaches at the initiation of criminal proceedings, *Kirby v. Illinois*, 406 U.S. 682, 689(1972); *see also Brewer, supra* (stressing importance of protecting right to counsel at pretrial stages), and continues through sentencing, *Mempa v. Rhay*, 389 U.S. 128, 134-37 (1967) (holding that the right to counsel extends to every stage of criminal proceedings where the substantive rights of the accused might be affected, including post- conviction sentencing and revocation of probation). Counsel's inaccessibility to clients, whether restricted by the Government or a pandemic, impedes the right to counsel.

1. Counsel's Inability to Properly Prepare the Case for Trial.

Congress recognized the importance of in-person communications between capital counsel and their clients by mandating that counsel in capital cases "shall have free access to the accused at all reasonable hours." 18 U.S.C. § 3005; *United States v. Savage,* 2010 WL 4236867 at 1 (E.D. Pa. 2010).[57] Additionally, pursuant to the statutory requirements of 18 U.S.C § 3142(i)(3), an incarcerated defendant must "be afforded reasonable opportunity for private consultation with counsel." This section was "designed to protect a defendant's Sixth Amendment right to

---

[57]    Although currently the charges against the defendants are non-capital, the Government has not provided assurances prohibiting that potential. *See* ECF 235 at 34.

Defense (Donovan Cloud) Motion to Continue
Trial and to Strike the Motion to Suppress Identification
(ECF No. 194) With Leave to Renew

counsel." *Falcon v. U.S. Bureau of Prisons*, 52 F.3d 137, 139 (7th Cir. 1995). "[I]f that right is being infringed, [the Court] has the statutory authority to protect [a defendant's] access to counsel." *Id.*

"Face-to-face pretrial meetings between a defendant and his attorney are important, especially where there appears to be a serious attempt to mount a defense." *United States v. Bankas*, No. 05- CR-075-S, 2005 U.S. Dist. LEXIS 19637, at 6 (W.D. Wis. Sep. 8, 2005). Alternatives to in-person meetings with the client – such as telephone, video-conferencing, or written communications – are inadequate means for counsel to render effective representation. *See United States v. Kennedy*, No. 18-20315, 2020 U.S. Dist. LEXIS 53359, at *9 (E.D. Mich. Mar. 27, 2020) (finding that "communication difficulties [imposed by the jail due to COVID-19] are endemic to confinement during the current pandemic and, under the facts of this case, further support Defendant's release" under § 3142(i)).

In *United States v. Beland*, No. 2:19-CR-00021 WBS, 2020 U.S. Dist. LEXIS 118269, at *6 (E.D. Cal. July 1, 2020), the parties stipulated that:

> the evolving COVID-19 pandemic has delayed or inhibited defense counsel's ability to effectively prepare for trial, and/or affected the manner and speed of any defense preparation that is possible ... an ends-of-justice delay is particularly apt in this case because the safety measures instituted in response to these public health concerns—such as stay-at-home orders, travel restrictions, and closures—have affected, and will continue to affect, defense counsel's ability to conduct investigation and

Defense (Donovan Cloud) Motion to Continue
Trial and to Strike the Motion to Suppress Identification
(ECF No. 194) With Leave to Renew

25

prepare for trial, including identifying and interviewing potential witnesses and identifying and retaining potential expert(s) …

*See also United States v. Ward*, No. 2:19-CR-0129-MCE, 2020 U.S. Dist. LEXIS 155165, at *6 (E.D. Cal. Aug. 26, 2020); *United States v. Bluford*, No. 2:18-CR-00008-MCE, 2020 U.S. Dist. LEXIS 155171, at *5-6 (E.D. Cal. Aug. 25, 2020)(In addition to the public health concerns cited by the General Orders and declarations of judicial emergency, and presented by the evolving COVID-19 pandemic, an ends-of-justice delay is particularly apt in this case *because defendant's counsel has relayed that he has been delayed in consulting with defendant due to the COVID-19 pandemic and visitation restrictions at the jail where defendant is detained*.) (Emphasis added).

Furthermore, the Supreme Court announced long ago that it was "clear that the 'assistance of counsel' guaranteed by the Sixth Amendment contemplates that such assistance be untrammeled and unimpaired by conflicting interests. If the right to the assistance of counsel means less than this, a valued constitutional safeguard is substantially impaired." *Glasser v. United States*, 315 U.S. 60, 70 (1942). Simply put, the Sixth Amendment right to counsel demands conflict-free counsel. *Wood v. Georgia*, 450 U.S. 261, 271 (1981) ("Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest").

Defense (Donovan Cloud) Motion to Continue
Trial and to Strike the Motion to Suppress Identification
(ECF No. 194) With Leave to Renew

As the National Association of Criminal Defense Lawyers ("NACDL") recently noted, "[c]onflict-free representation is not possible where defense counsel are placed at risk of infection and fear contagion ... Fear of contagion during counsel/client meetings or court, on the part of defense counsel, creates a conflict with the duty of zealous advocacy."[58]  Simply stated, the pandemic has created a situation where counsel is unable to provide effective representation to clients based on a conflict between their personal interests in not being exposed or exposing others to the virus and their client's interest in a comprehensive, thorough, and timely investigation of their case. Counsel are laboring under an actual conflict of interest because they are "required to make a choice advancing [their] own interests to the detriment of [their] client's interests." *Stoia v. United States*, 22 F.3d 766, 771 (7th Cir. 1994) (internal citations omitted).

From March 2020, the beginning of the pandemic, to November 24, 2020, the last status conference, the defense received approximately 2000 pages of discovery, 12 hours of audio recordings, and 180 minutes of videos.  Just since the October 27,

---

[58]    *See, Criminal Court Reopening and Public Health in the COVID-19 Era, NACDL Statement of Principles and Report,* June, 2020, at 4-5. https://nacdl.org/getattachment/56802001-1bb9-4edd-814d-c8d5c41346f3/criminal-court-reopening-and-public-health-in-the-covid-19-era.pdf

Defense (Donovan Cloud) Motion to Continue
Trial and to Strike the Motion to Suppress Identification
(ECF No. 194) With Leave to Renew

27

2020, status conference, the defense received nearly 3,500 pages of discovery (*e.g.*, lab reports, latent print images, FBI reports, and missing serial reports), twenty (20) CD's containing nearly 55 hours of phone calls and a 1,000 page phone extraction, and a 22 GB flash drive of 3D scanner projects.

Furthermore, as noted at the November 24, 2020, status hearing, the Government anticipates receiving numerous other reports by February, 2021. And depending on the results, the Government may seek a Fourth Superseding Indictment that may include potentially capital-eligible charges.

The Yakima County Jail, where Donovan Cloud has been incarcerated, closed all jail visits in the middle of March, 2020, and only recently (October 15, 2020) have legal visits resumed. Given the amount of discovery, both time and COVID-19 have altered in-person counsel-client contact.

2. Counsel, Investigators and Experts Have Been Unable to Conduct Adequate Investigation.

Additionally, due to health and safety concerns, counsel has been unable to conduct the type of investigation required under the Sixth Amendment. Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. *Strickland v. Washington*, 466 U.S. 668, 691, 104 S. Ct. 2052, 2066 (1984). Under *Strickland*, counsel's investigation must

Defense (Donovan Cloud) Motion to Continue
Trial and to Strike the Motion to Suppress Identification
(ECF No. 194) With Leave to Renew

determine strategy, not the other way around." *Browning v. Baker*, 875 F.3d 444, 473

(9th Cir. 2017), *quoting Weeden v. Johnson*, 854 F.3d 1063, 1070 (9th Cir. 2017).

> It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction. The should always include efforts to secure information in the possession of the prosecution and law enforcement authorities. The duty to investigate exists regardless of the accused's admissions or statements to the lawyer of facts constituting guilt or the accused's stated desire to plead guilty.

ABA    Standards    for    Criminal    Justice    4-4.1    (2d    ed.    1980).

*Summerlin v. Schriro*, 427 F.3d 623, 629-30 (9th Cir. 2005).

## E. CONCLUSION

For the reasons expressed above, the Defense respectfully requests the Court

to strike the dates set out in ECF No. 165; set a trial date for February 28, 2022, with

a pre-trial for January 25, 2022; and strike the Defense Motion to Suppress

Identification (ECF No. 194) with leave to renew.

DATED this 8th day of December, 2020.

Presented by:

/s/ Richard A. Smith
RICHARD A. SMITH, WSBA 15127


/s/ Mark A. Larrañaga
MARK A. LARRAÑAGA, WSBA 2275
Attorneys for Defendant Donovan Cloud

Defense (Donovan Cloud) Motion to Continue
Trial and to Strike the Motion to Suppress Identification
(ECF No. 194) With Leave to Renew

1

2                          *CERTIFICATE OF SERVICE*

3          I hereby certify under penalty of perjury of the laws of the State of Washington

4    that on December 8, 2020, I electronically filed the foregoing with the Clerk of the

5    Court using the CM/ECF System which will send notification of such filing to all

6    parties.

7

8                                    */s/ Lugene M. Borba*
                                     _____
9                                    LUGENE M. BORBA
                                     Legal Assistant, Smith Law Firm
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Defense (Donovan Cloud) Motion to Continue
Trial and to Strike the Motion to Suppress Identification
(ECF No. 194) With Leave to Renew

                                    30